
RECEIVED
JAN 4 200[?]
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOHN M. SINEGAL | CIVIL ACTION NUMBER: 04-CV-1188 |
| VERSUS | JUDGE DOHERTY |
| BAKER HUGHES OILFIELD OPERATIONS, INC. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

This matter comes before the Court on a Motion for Judgment filed on behalf of defendant, Baker Hughes Oilfield Operations, Inc. ("BOT"), who seeks summary judgment dismissing plaintiff's claims made pursuant to the Louisiana Employment Discrimination Act, La. R.S. 23:301, *et seq.* The motion was opposed by plaintiff and has been taken under advisement by the Court.

### I. Factual Background

Plaintiff was hired by defendant as a full time employee in 1998. Plaintiff was assigned the position of Metal Finisher in BOT's manufacturing facility in Broussard, Louisiana, earning $8.00 per hour. Plaintiff was initially assigned to the night shift. Plaintiff's job duties included operating the drill press, transporting parts with the forklift, general housekeeping and any other duties that his supervisor deemed necessary. (Defense Ex. 2). Plaintiff was given a ten (10%) percent increase in pay in December 1999. (Defense Ex. 4). In February 2000, plaintiff received a promotion from Metal Finisher to Assembler, secured a position on the day shift, and received an increase in pay from $8.80 per hour to $10.05 per hour. (Defense Ex. 5).

1

In September 2000, plaintiff was issued a written Discipline Report for excessive tardiness and absenteeism. (Defense Ex. 6). The report warned plaintiff that he needed to correct his behavior immediately and that if the problem persisted, further corrective action would be taken, up to and including termination.

According to defendant and supported by the Affidavit of Steve M. Everett, a supervisor at BOT's manufacturing facility, beginning in 2001, BOT instituted a system of scheduled pay progressions in order to equalize the wage rates between its employees and those of various other Baker Hughes Divisions. (Defense Ex. 21). The pay progressions were periodic increases in hourly wages which occurred every three (3) months and were awarded based on job performance during the previous three (3) month period. Id. Absences and tardiness were among the factors considered in determining whether an employee qualified for a pay progression. Id.

According to Mr. Everett, in September 2001, plaintiff was awarded a $.75 per hour pay increase, bringing his hourly rate to $11.00 per hour. Id. Harry Johnson, another African-American employee, also received a $.75 per hour pay increase. Id. Seventeen employees who were of Caucasian or other races received smaller pay raises of only $.50 per hour. Id.

BOT employees were eligible to be considered for another pay progression in December 2001. Defendant asserts five African-American employees received pay increases in December 2001. Id., but that plaintiff failed to qualify for the December pay raise due to excessive absences. (Defense Ex. 7). According to defendant, BOT employees were allowed forty hours of sick leave and eighty hours of vacation leave per year. Once they exhausted sick leave and vacation leave, they were allowed to take authorized leave without pay under the conditions stated in BOT's Policy and Procedures Manual. (Defense Ex. 21). By January 26, 2001, plaintiff had exhausted all of his sick

2

leave for the entire year of 2001. (Defense Ex. 7). By October 11, 2001, plaintiff had exhausted all of his vacation leave for the year. Id. From October 2001 to December 2001, plaintiff took over fifty hours of leave without pay in addition to the sick leave and vacation leave he had already exhausted. Id.

Plaintiff received a second warning in February 2002 regarding his excessive tardiness and absenteeism. (Defense Ex. 8). Like the warning in September 2000, plaintiff was again advised that if he did not correct his behavior, his employment would be subject to termination. Consequently, plaintiff was denied a pay increase in March 2002. (Defense Ex. 9). Later that March, plaintiff was reprimanded again, this time for sleeping on the job. (Defense Ex. 10). This act of misconduct caused plaintiff to be denied another pay progression.[1] (Defense Ex. 10 and 11).

Plaintiff received his last warning in September 2002. BOT's plant manager, Gary McAllister, told plaintiff that if he missed one more day, his employment would be terminated. (Defense Ex. 12 and 20, p. 55, l. 19-23). That warning again resulted in plaintiff being denied a pay progression. (Defense Ex. 12).

When 2003 began, plaintiff again lapsed into a pattern of absences, missing work on January 21, February 1, February 2, and February 12. (Defense Ex. 12). This left plaintiff with only one sick day left for the remainder of the year 2003. On February 12, 2003, plaintiff called into work and asked to use his vacation leave for the remainder of that week. (Defense Ex. 13). According to defendant, BOT terminated Sinegal's employment on February 14, 2003 because of plaintiff's history of excessive absenteeism and tardiness. (Defense Ex. 14).

---

[1] In addition to plaintiff, four Caucasian employees in BOT's manufacturing facility failed to qualify for this pay increase due to poor performance or failure to meet the pay progression criteria. (Defense Ex. 21).

3

One year after his termination, plaintiff filed the instant lawsuit against BOT in Louisiana State Court, asserting claims pursuant to the Louisiana Employment Discrimination Act, which exposes an employer to liability for unlawful employment practices. *See* La. R.S. 23:332. BOT removed the lawsuit to this Court on the basis of diversity jurisdiction.[2]

## II. Law and Analysis

### A. Summary Judgement Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted

---

[2] Plaintiff has put forth no evidence or argument contesting the facts as stated above based largely on information provided by defendant.

4

evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphasis added).

### B. Wrongful Termination

Plaintiff alleges that defendant violated his rights under the Louisiana Employment Discrimination Law, La. R.S. 23:301, *et seq.*, by terminating his employment in February 2003 based on his race. Louisiana State Courts routinely look to federal jurisprudence in interpreting Louisiana's anti-discrimination laws; this Court will do the same. *See e.g.*, Smith v. Amedysis, Inc., 298 F.3d 434, 448 (5th Cir. 2002); King v. Phelps Dunbar, L.L.P., 743 So. 2d 181, 188 (La. 1999).

In an employment discrimination case, plaintiff has the initial burden of establishing a *prima facie* case of racial discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The plaintiff may satisfy this burden by showing: (1) that he belonged to a protected class; (2) that he was qualified for his position; (3) that he was subject to an adverse employment action; and 4) that he was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably. Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001).

If the plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises. The burden then shifts to the defendant to produce evidence that "the adverse employment actions were taken 'for a legitimate, non-discriminatory reason.'" St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)). "[T]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, *if believed by the trier of fact,* would support a finding that the unlawful discrimination was not the cause of the employment action." St. Mary's at 507 (quoting Burdine at 254-55) (emphasis in original). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a mere pretext for discrimination." Burdine at 253. Plaintiff may do this either directly by "persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." Smith v. Wal-Mart Stores, 891 F.2d 1177, 1179 (5th Cir. 1990) (quotation omitted).

In the instant matter, defendant first argues that plaintiff is unable to make a *prima facie* case of discrimination for the wrongful termination claim because he cannot show that he was replaced by a person outside of his protected class. Plaintiff states in his deposition that he *believes* he was replaced by a BOT employee with whom he worked named Pat Picard.[3] (Defense Ex. 20, p. 82, l. 25 - p. 83, l. 5). However, no party has made any assertions to the Court about the race of Mr. Picard, and thus the Court has no way of determining whether or not Mr. Picard is outside of plaintiff's protected class. Although plaintiff has failed to carry his burden of showing he was replaced by someone outside of his protected class, the Court will assume, for purposes of this motion, that Mr. Picard did indeed take over plaintiff's position and is outside of plaintiff's protected class. Even with the benefit of this presumption, plaintiff's wrongful termination claim is nevertheless denied for the reason below.

Defendant argues that even if plaintiff has proven a case of *prima facie* discrimination, defendant had a legitimate, non-discriminatory reason to terminate plaintiff: excessive absenteeism and tardiness. In support of its argument, defendant submits numerous documents confirming plaintiff's history of excessive absences and tardiness. Included among the documents submitted by defendant are: plaintiff's termination notice which states "[t]ermination effective 2/14/03 as a result of excessive absenteeism" (Defense Ex. 14); the records of plaintiff's supervisor which document the dozens of occasions where plaintiff was either absent or tardy (Defense Ex. 13); and four (4) discipline reports showing that plaintiff received written and oral warnings concerning his absenteeism and tardiness. (Defense Ex. 6, 8, 14 and 20 (pp. 55, l. 16 - 56, l. 17). In fact, plaintiff acknowledges that he was orally warned in September of 2002 that if he missed any more work, he

---

[3]Defendant does not state in its brief who took over plaintiff's position.

7

would be terminated. (Defense Ex. 20, pp. 54-56; p. 83, l. 17-23). Due to the evidence submitted by defendant and plaintiff's own admissions at his deposition, defendant has proven it had a legitimate, non-discriminatory reason (excessive absenteeism and tardiness) for terminating plaintiff's employment. *See* Valdez v. San Antonio Chamber of Commerce, 974 F.2d 592, 596 (5th Cir. 1992) (poor job performance is a legitimate, non-discriminatory reason to fire an employee).

As defendant has set forth through the introduction of admissible evidence a legitimate, non-discriminatory reason for plaintiff's termination, the burden now shifts to plaintiff to show, by a preponderance of evidence, that BOT's reason for terminating plaintiff is merely pretext for discrimination. Plaintiff has put forth no evidence (and no convincing argument) tending to show that forbidden characteristics played a role in BOT's decision to terminate plaintiff.

Plaintiff's entire argument in his brief that excessive absenteeism and tardiness were pretext, is as follows:

> An analysis of Caucasian employees and the promotion/raise for such versus those of African American employees would be disproportionately in favor of Caucasian employees.
>
> Sinegal testified in his deposition that he would have preferred to work in the front office but such jobs were never posted, resulting in the African American Employees having no opportunity to learn of the types of jobs which existed in the front office and which might have been available for application. In fact, on inquiring concerning the same, Sinegal received the response that the jobs in the front office were not for him. [Doc. 25, p.4].

Plaintiff's wholly conclusory statement regarding promotions/raises of Caucasian employees is not sufficient to show that absenteeism and tardiness were defendant's pretext for terminating plaintiff. The Fifth Circuit has stated that "more than statistics are usually necessary to rebut an employer's strong showing of a legitimate non-discriminatory reason for discharging a particular employee...."

Bauer v. Albemarle Corp., 169 F.3d 962 (5th Cir. 1999). In this case, plaintiff has only stated his subjective belief, couched as a statistic. His unsubstantiated assertions are insufficient to carry his burden of proof and show that defendant's reason for termination is a pretext for discrimination.

Plaintiff's argument that he would have preferred to work in the front office is also without merit. If the jobs in the front office were not posted, that equally affects all employees - not only African-American employees. Plaintiff makes no attempt to explain why the fact that front office jobs were not posted demonstrates discrimination by BOT. The fact that jobs in the front office were not posted does not tend to prove that defendant terminated plaintiff based on impermissible considerations. The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).[4]

Elsewhere in his brief, plaintiff states that "BOT clearly indicated to Sinegal in September 2002 that he would be terminated if he missed one more day during 2002. Sinegal did not miss any additional days during 2002." [Doc. #25, p.4] The Court will construe this statement as argument by plaintiff that defendant's stated reason for plaintiff's termination is pretext for discrimination. Even when considered in that light, plaintiff has put forth no evidence tending to prove that his supervisor's statement warning him he would be fired if he missed any more work applied only to the year 2002. Furthermore, plaintiff's deposition testimony contradicts his argument. When questioned about a conversation with his supervisor, plaintiff testified as follows:

---

[4]Furthermore, even if this Court were to find that not posting front office positions was a means of discrimination by defendant, this Court would still find that plaintiff's record of excessive absenteeism and tardiness was a legitimate, non-discriminatory reason for plaintiff's termination.

9

> A: Gary said, remember what we spoke about, and I said yes, and he said, well, I'm going to stick to my words and I'm going to terminate you.
> Q: Okay, when Gary said remember what we spoke about and you said yes, what were you referring to? What was Gary referring to?
> A: He was referring to in September of 2002, he said - he told me that if I missed one more day, it don't pay for me to come back, that, you know, he was going to terminate me.

Nothing in the above testimony shows that plaintiff's supervisor qualified his statement to only the year 2002. Plaintiff's counsel's spin on this statement is unconvincing and unsupported by the evidence in this matter.

Moreover, BOT's written policy as stated in its Policy and Procedures Manual did not require an employee to exhaust his accumulated leave before being at risk for termination due to absences. BOT's policy reads as follows:

> DISCHARGE FOR EXCESSIVE ABSENCE
> It must be recognized that there may be instances in which an employee's absence, even though not the fault of the employee, becomes so excessive or repetitive as to render continued employment inappropriate. (Defense Ex. 19).

At his deposition, plaintiff acknowledged that he was aware of this policy (Defense Ex. 20, p. 65), and that he had been warned if he continued to miss work, he would be terminated. (Id., p.55).

In spite of the above admissions, plaintiff argues that BOT's reason was merely pretext, stating:

> ...there are many other guys that missed work, you know, constantly and – because they were ill or their wives were ill, and, you know, they're still here – they were still there, and I just felt like them being Caucasian, they had, you know, a better – they had – they had the upper hand on us African Americans that were there. If you were African American, you were fired, you know, you were let go. (Defense Ex. 20, p. 66).

The two Caucasian employees plaintiff subsequently identifies in his deposition as being absent to a greater extent than him - Rayford Guidry and Patrick Abshire - were on Short Term and Long Term

Disability due to documented medical illnesses. (Defense Ex. 25). In order to prevail on a claim of disparate treatment, "a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." Okoye v. Univ. Of Texas Houston Health Science Ctr., 245 F.3d 507, 514 (5th Cir. 2001) (quotations omitted). Here, plaintiff has failed to demonstrate that he applied for disability benefits or that he was otherwise similarly situated to these employees. As the Fifth Circuit has pointed out, "McDonnell Douglas is not a vehicle that permits a plaintiff to cast the burden of persuasion on the defendant and compel him to prove that his actions were nondiscriminatory." Elliot v. Group Medical & Surgical Service, 714 F.2d 556, 567 (5th Cir. 1983). Plaintiff has failed to carry his burden of proof on this issue.

Defendant has presented sufficient, unrefuted evidence[5] showing that its decision to terminate plaintiff was based on legitimate nondiscriminatory reasons. Plaintiff on the other hand has failed to present *any* evidence that his race played a role in BOT's decision to terminate him, or that BOT's legitimate, non-discriminatory reason for plaintiff's termination is a pretext for discrimination. As plaintiff has failed to present evidence demonstrating that a genuine issue of material fact exists for trial, defendant's motion for summary judgment, asking this Court to dismiss plaintiff's claim of wrongful termination, is hereby granted.

### C. Failure to Promote/Failure to Award Pay Raises

In his Complaint, plaintiff argues that he and other African American employees were denied raises and bonuses associated with grade and/or level promotions, while promotions that were

---

[5] *I.E.*, numerous discipline reports addressing plaintiff's habitual tardiness and absenteeism; notes of plaintiff's supervisor; plaintiff's deposition wherein he acknowledges that he was warned he would be terminated if his job performance did not improve

11

received were much slower and more infrequent than those for Caucasian employees. [Doc. #1, ¶ 4-5]. Like a wrongful termination claim, a plaintiff who alleges employment discrimination by way of failure to promote and failure to award pay raises must first prove by preponderance of the evidence a *prima facie* case of discrimination. McDonnell at 802.

To establish a *prima facie* case, a plaintiff must show the following: (1) he is a member of a protected class; (2) he applied for a promotion to an available position for which he was qualified; (3) he did not receive the promotion; and (4) the employer filled the position with an employee from outside the protected class or continued to seek applicants for the position. EEOC v. Exxon Shipping Co., 745 F. 2d 967, 972 N.3 (5th Cir. 1984) (citing Page v. U.S. Industries, Inc., 726 F. 2d 1038, 1055 (5th Cir. 1984). If the plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." Id. Assuming the defendant provides such a reason, the plaintiff must be provided "the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine at 253 (citing McDonnell at 802).

Defendant first argues plaintiff's failure to promote and pay raise claims have prescribed. Discrimination claims under the LEDL are governed by a one year prescription period. La. R.S. 23:303(D). Prescription begins to run on these claims at the time the failure to promote or provide a pay raise occurs. Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 352 (5th Cir. 2001); King v. Phelps Dunbar, L.L.P., 743 So.2d 181, 187 (La. 1999). A defendant seeking to invoke the defense of prescription bears the initial burden of proving that prescription has occurred; if the defendant shows that the time delay has passed between the tortious act and the filing of a lawsuit, then the

burden shifts to plaintiff to prove that an exception to prescription applies.

In his petition, plaintiff alleges only the date of his termination. He fails to include any reference to when the alleged misconduct occurred.[6] Nor does plaintiff reference a time period in his opposition. Moreover, plaintiff fails to address at all in his opposition defendant's argument that plaintiff's claims for failure to promote and failure to provide pay raises have prescribed.[7] As defendant points out, these claims were not asserted until plaintiff filed this lawsuit on February 13, 2004. Plaintiff was terminated on February 14, 2003. Unless plaintiff is complaining that defendant failed to promote him or award him a pay raise between February 13-14, 2003 (a somewhat absurd assumption in light of plaintiff's attendance/tardiness record), these claims have prescribed. From the documents submitted to this Court by defendant (plaintiff submitted no document to this Court other than an opposition brief), it appears that the last time plaintiff was denied a promotion or pay raise was on September 20, 2002. (Defense Ex. 12). If that was indeed the last instance where plaintiff was denied a promotion or raise, those claims prescribed September 20, 2003.

Here, plaintiff has failed to address defendant's argument concerning prescription in any manner at all and has also failed to show in any manner that a failure to promote or provide a pay raise occurred between February 13-14, 2003. As such, plaintiff has failed to carry his burden of

---

[6] The only specific incident of either failure to promote or to award a pay raise that plaintiff asserts in his opposition brief is when a co-employee, Wayne Lassiegne, was promoted to assistant lead man - a position plaintiff claims he was led to believe would be his. Plaintiff does not allege any time frame in his opposition for when this promotion occurred, however, at his deposition plaintiff admitted that Mr. Lasseigne was promoted at least by September 2000. Therefore, by plaintiff's own testimony, any claim related to that particular promotion prescribed more than three and a half years prior to the filing of this lawsuit.

[7] The only reference to February 13-14, 2003 the Court has found is in Defense Exhibit 13 (supervisor notes) which states: "On 2/12/03 John called in sick and also he called that same afternoon requesting if he could take the rest of the week vacation...."

proof and defendant's motion for summary judgment on the issue of failure to promote is granted.[8]

## III. Conclusion

For the foregoing reasons, the Motion for Summary Judgment by Baker Hughes Oilfield Operations, Inc. is hereby GRANTED in its entirety.

THUS DONE AND SIGNED this 29 day of December, 2005.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

---

[8]This Court points out that even if it denied defendant's exception of prescription it would nevertheless grant the motion for summary judgment on these claims. First, plaintiff has not made a *prima facie* case of failure to promote/failure to award pay raises. He does not assert any particular promotion that he applied for and was denied, as is required in order to state a *prima facie* case. Second, even had plaintiff made a *prima facie* case, the Court has already found defendant has provided a legitimate, non-discriminatory reason for it's treatment of plaintiff - excessive absenteeism and tardiness.